Clerk please call the next case. Would counsels who are going to orally argue please approach the podium and introduce yourselves. Good morning Your Honors, my name is Mary Hodson Buehler. I'm an Assistant State's Attorney representing the people of the state of Illinois. Good morning, my name is Levi Harris and I am an Assistant Appellate Defender representing Mr. Easley. Very good. You both have 15 minutes. Appellant please reserve time for your rebuttal from that 15 minutes. You may proceed. As an initial matter, Your Honors, I want to make sure that you got our motion to sign additional authority the other day and that you had an opportunity to do that. That was allowed. Okay. Since you brought that up, Mr. Harris, do you have it in front of you by any chance, the Graham case? Yes. If you look at the last two pages of it, they talk about what could have happened in that case. At least that's the way I read it. So Graham holds, they follow Chaney which I wrote, which followed Owens, that in the case of a Class X offense, if you're trying to make a UUW into a Class X offense, you better not use the prior Class 2s twice. You can't make it a Class 2 and then a Class X at the same time. The Graham court continued with that and said in that case, Mr. Graham had a prior UUW by felon conviction and had the state use that as the basis in the indictment, as a basis to get him up to a Class 2. They said it was an alternative. Now, they didn't quite say that that would be the way to go or that would be okay, but they said they chose not to do that. The jury never heard about the prior UUW by felon, the prior Class 3, which would have raised it to a Class 2. But doesn't that, wouldn't that indicate in Graham, again, just in dicta, that it's okay, that Mr. Graham could have been convicted of the Class 2, maybe even the Class X, had they used the UUW by felon 1993 conviction, rather than his Class 2 conviction for dope in 1996? Your Honor, we don't believe so for a couple reasons. One, as you mentioned, that is dicta. But more importantly, the issue that we are raising and the way that we're framing it, in this case, was not at issue in Graham. So, for instance, there you had two enhancements that began with the move from Class 3 to Class 2, and then also there was an additional Class X. The defendant, as far as I know, did not make the argument that we're making, that there was a problem in the initial, that the first enhancement actually took place in the move from misdemeanor to felony. So, I guess I missed my may it please the court, but may it please the court. At Christopher Easley's trial, the state used the same prior conviction for unlawful use of weapons by a felon twice, once to elevate his offense from a misdemeanor to a felony, and again to elevate the offense from a Class 3 to a Class 2. Now, the state in its brief agreed that this was a double enhancement, and so the issue between the two parties has been that this was an, whether this was an enhancement that was allowed. Their interpretation is that it is, and Mr. Easley's is that it is not. Where's the first enhancement? The first enhancement, your honor, is from the misdemeanor to a felony. And that was based on what? Which was based on the prior UUW by a felon. And where's the second enhancement? The second enhancement is the move from Class 3 to Class 2. In the alternative, if your honors do not agree with that in light of Justice Quinn's opinion in Powell, we believe that even if this court takes the position that only one enhancement took place in this case, the state was still required under the Code of Criminal Procedure that this court should then vacate and remand on that basis. What did they do in terms of notice in this case? The indictment, did it refer to the prior UUW by felon? Yes, your honor. So what were you missing for notice? Well, for instance, in, take an aggravated DUI case. The state will put in the charging instrument what the prior DUIs are that gets you to this point, and then they say, and the state will be seeking an enhanced, you know, sentence based on the fact that there have been these prior DUIs. So in this case, had the state said, will we be seeking an enhanced, you know, but the... Did or did not in this case? Did not. Did not. So you're relying on that Section 111-3 that says you have to provide what your felony you're relying on, and you have to put in that you're intending to seek an enhancement. Is that what you're saying? Yes, your honor. And you're saying the second part wasn't complied with? Yes, your honor. Okay. And this was a confusion that persisted throughout trial. I mean, you get to sentencing. You've got, you know, the attorneys, the court are all still talking about, was this Class 3? Is this Class 2? At one point they even thought, and then thought better of it, should this go up to Class X? All of this could have been alleviated had the state just complied with the Code of Criminal Procedure from the get-go. We're seeking an enhanced sentence on the basis of the fact that this is a second UUW by a felon, which didn't take place. But your honors, our position is that you don't even necessarily need to reach that if we're still at the point where we consider that there was a double enhancement here, that basically the prior UUW was used as an element in the offense, and then it was also used to move the punishment, the classification of the offense, from a Class 3 to a Class 2. And as I say, the state basically conceded this point in its brief, and the only argument was whether the General Assembly had explicitly allowed this double enhancement to take place. Besides the fact that they... Where did you argue 111-3 in your brief? Your honor, we did not argue 111-3 in our brief. For the reason that, your honor, the state... We made the argument, this is a double enhancement, this is an impermissible double enhancement. The state's argument in light of PAL, which came down after our opening brief but before the state filed its brief, yes, this is a double enhancement, but PAL says it's okay. But again, so you didn't raise the 111-3 in your white brief because you knew in the blue brief they were not going to cite a 111-3 or that they were going to rely on PAL? We didn't know about PAL. Of course not. I don't mean to be cruel. But you did raise 111-3, so you might be right. I mean, 111-3 might be on point, it might be just the thing to do, but you don't cite it at all, and there's no case to cite it by either party. Are there on 111-3 that's applicability here? No, your honor, and if you are, you know, if you are amenable to it, I would be happy for us to file a briefing on that, because both parties to this point have proceeded on the assumption that this is a double enhancement case. So if that's based on a misreading of PAL, that there's only a single enhancement... Well, again, I don't know how they misread PAL since, having read it, reading, in the instant case there was only one enhancement. I don't know how anybody could read that to mean it's a double enhancement and it's okay. I know the state said that, but I don't know how they get that. You know, I don't write in French, it's English, and there's one enhancement, it's one enhancement. Well, I don't... I guess my, I'm, we'll let you know. The court will let you know if we're looking for more briefing on that issue. Okay, well, the three things I would say about that, your honor. First of all, you know, we would argue that they have forfeited the opportunity to make the argument now at this late juncture. You're trying to get it down, right? You're the one now, based on Justice Conner's question about 111.3, you're the one saying that's a legitimate ground for reversal. They're not arguing 111. They never looked it up, obviously, and neither did you. Well... But you didn't argue it. To this juncture, we don't know what they're arguing, so I'll save that point for rebuttal. Okay, all right. Second of all, your honor, I would, again, offer the opportunity. We'd be willing to file briefs. We'd love to see their position on the single enhancement. We would be happy to provide that, you know, in response to their briefs, if you all were amenable to that. Third, and with no disrespect to the honor of Powell, I think there are, the honor of Powell, to the justice who, to the honor who penned Powell. Don't worry about it. We're all on the same page, your honor. I'm always certain, but often wrong. I think it's distinguishable, first of all, for the fact that Powell is discussing a separate portion of 24.1.1e, which is addressing the forcible felony trigger to get it from class 3 to class 2. Whereas here, we're not talking about that. We're talking about what is essentially a recidivism provision at the beginning of 24.1.1e. But besides that, even laying aside the distinguishing characteristics, and again, with respect, we would argue that Powell was incorrectly decided that this was an incorrect interpretation of the statute. The first sentence of the statute, specifically 24.1.1e, is a sort of a universal provision that applies to, you know, if a person is convicted of UUW by a felon, it's a class 3 felony. Not if, and there's this other thing, or if there's nothing, you know, if there's a factor that's missing, then it's a class 3 felony. This would seem to apply across the board. Then you start taking off, but if there's this additional factor, it's a class 2 felony. If there's this factor, it's a class 2 felony. So we believe that Powell overlooked that there's a universal provision, and then there's more specific provisions that tick these up to class 2 felonies. Also Powell, if read, literally would seem to create multiple different UUW by a felon. So that a minimus wouldn't just say UUW by a felon, it would be UUW by a felon and had a prior UUW. UUW by a felon plus forcible felony. So that there are all these different, I mean, again, your honor, you're the one who wrote it, but my understanding of Powell would seem to be that there's only one step from misdemeanor straight to whichever class 2 felony. So then you no longer have a crime of just UUW by a felon, you have multiple UUWs by a felon going in any which direction. Just as you mentioned earlier, a very good analogy, Mr. Harris, is the DUIs, and there are super DUIs, there are multiple types of a DUI, and all IDOC needs to know on the minimus is what's the class. The class 1, 2, 3, 4, whatever it's going to be, X. The minimus was just an example. I would read this to come up with several different versions of UUW by a felon. Well, some versions it would be different sentencing versions. That's correct. Based on the same physical act of carrying a gun in your pocket in this case, yes, you're right. That's what it means. I would agree with you. Taking it to a logical extension, but I think that's what the statute says, does it not? So if you were caught with a gun in your pocket and it's your first offense, well, that's a UUW, period. If you're a convicted felon, that's a class 3. If you're a convicted felon and one of those felonies was gun in your pocket earlier, UUW earlier, or dope, any class 2 or higher, or violent crime, whatever it is, forcible felony, whatever, frankly, the incident was, power was, yeah, no, it's a class 2. What's wrong with that scheme? Well, Your Honor, I disagree that that is the correct interpretation of the statute. But what is wrong with that scheme, I don't know if I would use the word wrong. I just think it's complicated and this would be the first time that now all of a sudden we've got multiple different kinds of UUW by a felon that I don't know that the General Assembly intended when it did this. Counsel, let me ask you this. In the first part of that section, it clearly says, any second or subsequent violation should be a class 2 felony, clearly, right? Yes. So, doesn't that kind of suggest they're allowing for the double enhancement? So you get one free pass then? If you're a convicted felon, and you have a weapon, the next time you do it, you take a charge with it, maybe then the third time? I mean, how does that work? Your Honor, I don't know how it works. But what I do believe is that this statute is clear that the legislature intended to  However, it is not explicit in this statute that they intended to do so if that prior UUW by a felon is the only felony. So we make the arguments in our brief that these are analogous to other more general recidivism provisions, the class X provision, the extended term provision. Nothing in those statutes is any less clear. It says if a defendant who's been convicted of two or more class 2s is convicted of a subsequent one, it's class X. Isn't this different? It's so specific to the charge here. I mean, when you term, we talk about class 2, 3, class X, whatever, there are a number of different criminal charges we're talking about that are contained in it. This is specifically related to UUW by a felon, right? Yes. I mean, it's in the UUW by a felon statute. So to compare those two, it's not quite apples to apples. There's a different analysis maybe you would go through or different things as you're comparing one versus the other. Well, your Honor, we definitely believe that they are comparable because, I mean, the basic point is the same, that there's been a use of this prior felony as an element of an offense and then there's a use of it to move from a class 3 to a class 2. But even those are different, are they not? Just looking at the statute again, based on your argument, again, this doesn't change the definition of UUW. This is E, which is the sentence. And so it reads sentence, violation of this section by a person not confined, which he's not, shall be a class 3 felony for which the person is sentenced to a term of imprisonment shall be sentenced to no less than 2 and no more than 10. Right? That's the first sentence. Now, class 3s are historically 2 to 5s, right? But here it's a gun, your second offense, well, it's 2 to 10, we can give you 10 years. And then it goes on. Any second or subsequent violation, which is the argument here, shall be sentenced to a term of imprisonment, it shall be a class 2 felony for which you get not less than 3 and no more than 14. So debt is also different, because 3 to 7 is a class 2, right? So they're doubling it as well. I know we've been- Why can't they do that? Why can't the legislature do that? Why couldn't they say it's 3 to 100? Your Honor, we believe that they could, but they didn't, and they didn't make it explicit in this statute. All they would have had to do, for instance, let's suppose that they had changed the order of section E, subsection E, to put all of these other things first. If you do this and you had a prior class, then it's a class 2. If you do this and it's a forcible felony, whatever. And then you have a saving clause. For all other, you know, not mentioned above, it's class 3. That would make more sense than beginning with this universal provision- Well, who's confused by it? Do you think Mr. Easley was confused when he put the gun in his pocket to go out that evening, or when he was shooting at the guy in the street, whatever you want to believe? Do you think he was confused that, geez, I think it's a class 3. Pretty sure. Well, Your Honor, I think we're presumed to know the law, and the law has to be clear before we're presumed to know it. But I think, obviously, the parties were confused. The court was confused. What- What were you basically, the idea that the court, the trial court was confused? Yes. In this case? Yes. Why? Why, what makes me believe that, or why was he confused? No, what makes you believe he was confused? What do you see in the record or common sense? You don't need the record. I believe that the discussion of, you know, what is this? Is this class 3? Is this class 2? Well, you know, what, can we use this prior, maybe it's class X, because if we move it up to class 2, then it's class X. But then they all agree, eventually, both the public defender, whoever it was, the defense attorney, the state's attorney, this is a class 2. And they agreed to that before trial, did they not? I don't believe that they agreed to it before trial, Your Honor. Could be wrong. Bad mystery. Please conclude if you'd like five minutes for your thoughts. Okay. Well, let me conclude then by saying, you know, we believe that even if this is a single enhancement case, which again, this would be the first time that's been dealt with that way by the parties, we still didn't have the notice that's required by the Code of Criminal Procedure, which says you have to set out that you intend to seek an enhancement and the basis for that enhancement and the charge so that everybody knows up front for the entire proceeding, you know, what basis we're proceeding on, if I'm going to plead, what am I facing, do I want to waive a jury trial? All these things a defendant has to know to do, this can only come when the state gives notice of what its intentions are. Thank you, Your Honors. Thank you. Good morning again. Thank you. Good morning again. May it please the Court. There is absolutely no confusion in this statute. But first I'd note that as we argued in our brief, defendant has waived a forfeited review of this because he did not raise this particular issue in his motion to reduce or did he present it before court. The way he's trying to get around the forfeiture issue is saying the sentence is void. This sentence is not void. This was a proper and a permissible double enhancement. There is an exception to the prohibition against double enhancement, and that occurs when the legislature clearly intends to enhance the penalty based upon some aspect of the crime and the intention is clearly expressed. Section 24-1.1E, it cannot be any more clear what this statute is. Unlawful use of possession by a felon. The first time you're a class three. You do this again, it doesn't say but. There is no confusion. And any subsequent or second or subsequent violation shall be a class two felony for which the person shall be sentenced to a term between three and 14 years. The defendant was put on notice that the state was going under this statute 24-1.1 because it was clearly stated in the indictment and they clearly referred to the prior UUWF. The intention of the legislature is clear. They don't want prior felons to be running around the city with guns. The defendant did it once in 2006, he was sent to the penitentiary. He comes out of the penitentiary and if my memory serves me within several months, he's caught again with a weapon on the street. Not only is it a pocket, there was testimony that he was shooting a gun. There is, there cannot be anything more clear and the intent of the legislature is clear. The trial court did not impermissibly sentence the defendant or enhance his penalty. They simply imposed the special penalty range established by the legislature. It could not be more clear. And as defense counsel's already alluded to, People v. Powell is a great case. A great decision, Justice Quinn, but the interpretation of the statute is clear. Defense counsel wants the legislator to turn around and bring up the class two first and then put the three. That doesn't make any sense. The legislature said, one time you commit a UUW by a felon, class three. Subsequent, class two. Forcible, class two. And then provides for other certain situations. Is that a single enhancement or a double enhancement? Well, what we're arguing is that it was a permissible double enhancement. Are you wrong? I mean, now, is this defendant, Mr. Easley, is this a double enhancement or is it a single enhancement? With regard to him interpreting the statute, it's a permissible double enhancement. However, the argument- Where's the first enhancement? Well, the first enhancement, and our position is, it would be a permissible double enhancement. But it really is an enhancement based on a true reading of the statute. Because the statute provides, if you violate this twice, you're class two. It specifically provides a sentence. We're not trying to- Doesn't that make it a single enhancement, Ms. Hudson-Bielman? Well, your honor, I would defer to you, and I do agree with you at this point that it would be a single enhancement, because it provides a special sentencing scheme. We're not looking to enhance him to a class X. As a matter of fact, if you review the trial record, the only reason there was a slight, slight, slight bit of confusion was because the state was arguing for a class X. And defense counsel said, no, no, and the court looked, and he said, you know, this isn't a class X. The cases relied on defense counsel were class X. The recently cited case was where the state sought to, they relied on the 2006 possession of a controlled substance as a prior felony to have the defendant in the Graham case to be a class two. And then after the defendant was convicted, they said, oh, well, we want to use that class two to be a class X extendable. So why don't we substitute out his prior UUWF? Well, the court recognized he can't do that. There's nothing in the extended term statute or the class X sentencing statute that allows an enhancement. In this case, and in this statute, the specific statute allows for a sentencing range of three to 14. But even if this court determines that defendant was not properly sentenced under 24-1.1, defendant was properly sentenced to an extended term. Defendant had a prior PSMV, possession stolen motor vehicle. That was discussed during the sentencing hearing. It was discussed, counsel, what was contained on the charging instrument, pursuant to 5111-3. And it was the UUW by a felony, Your Honor. It was actually on the charging instrument. Yes, it was. The 06 UUW by a felony. So even if this court determines that- Did that contain all the additional language of, and we're advising you, Mr. Eesley, that we're seeking an extended term? No, but all defense counsel and Mr. Eesley would have to do is look at the statute under which we were charging him, 24-1.1, and you see that there is a special sentencing range. So can we just dismiss that one part of 111-3 that says it's got to contain the language? Because defendant was specifically charged under 24-1.1 and the language is contained with the sentencing range is. Well, does it say in 111-3 except for- No, it doesn't. And I'm happy, again, as defense counsel, I'm happy to write something on it with the people's position is. But our position is he was notified, he knew the charges he was facing, second conviction for UUWF, and he was sentenced to quarterly. If there are no further questions, we ask that you affirm the defendant's nine-year sentence. Thank you. Five minutes, sir. All right, hopefully I won't need that long. Just four quick points. First of all, counsel said that the legislature does not want people to be running around with guns. I believe that that's probably in all of our positions that we share that, but the fact that they intended to punish the use of guns or the possession of guns by felons does not mean that this statute is clear that they intended to do so by using prior UUWs by a felon twice, once as an element of defense, and again for an enhancement. I'm still unclear on what the state's position is, whether this is a single enhancement or a double enhancement. I would say that nothing in the Class X or extended term statutes recidivism provisions distinguish them meaningfully from the rationale of 24 1.1 E, so that I believe that the reasoning should apply here as well as there. And finally, the notice provision in 111.3c, Justice Quinn, even under your position in Powell, there was one enhancement. There was a move from misdemeanor to class two felony. And under 111.3c, the state was required not only to put what the prior felony was, but to say the state intends to seek an enhanced term. So what the defendant knew and when he knew it is not the issue. What is the issue is whether the state complied with the notice requirement. Are there no further questions, your honors? I want to go over the additional briefing here real quick. We've asked that you file Mr. Harris a 21-day, anything you wish on the 111.3, 111.3c, and you'll have 14 days to respond, no reply period, okay? This matter is taken under advisement.